```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

UNITED STATES OF AMERICA,    )
                             )
         Plaintiff,          )
    v.                       )    No. 4:09CR506-DJS
                             )
MICHAEL R. MASSEY,           )
                             )
         Defendant.          )

### ORDER

This matter is before the Court on the report and recommendation [Doc. #20] issued by Magistrate Judge Mary Ann Medler, which recommends that the Court deny defendant Michael Massey's motion to suppress evidence [Doc. #12]. Defendant filed a statement of objections to the report and recommendation [Doc. #22], as allowed by 28 U.S.C. §636(b)(1)(C), and the government filed a response [Doc. #23].

### Procedural History

Defendant is charged in Counts I and II of the Indictment with possession of child pornography. In his motion to suppress, defendant argues, among other things, that the Search Warrant used to gain entry into defendant's residence was not supported by probable cause. Further, defendant argues that Detective Michael McCartney lacked probable cause or a reasonable suspicion to question defendant, and therefore such questioning was in violation of the Fourth Amendment. Defendant seeks an order suppressing all

physical evidence found during the search and all statements made by defendant from the moment the questioning started.

Following an evidentiary hearing on September 3, 2009, Judge Medler issued a report and recommendation. She finds that the Affidavit in support of the Search Warrant established probable cause to believe that a computer at defendant's residence had child pornography on it, and that the Search Warrant properly sought to search the residence and all computers in the residence. Further, she finds that the brief detention of defendant was proper and lawful, and that to whatever extent defendant is claiming that Det. McCartney needed an independent reasonable suspicion or probable cause to advise defendant of his <u>Miranda</u> rights and question him, such an assertion is without merit. Accordingly, the magistrate judge recommends that defendant's motion be denied.

**Standard of Review**

Pursuant to 28 U.S.C. § 636(b)(1)(C), a court shall make a de novo determination of those portions of the report, findings, and recommendations to which a party has objected. A court may accept, reject, or modify, in whole or in part, a magistrate judge's findings or recommendations. A court may also receive further evidence or remand the matter with instructions.

**Statement of Facts**

The report and recommendation in this case provides a detailed account of the relevant events surrounding the search of

defendant's residence and the interaction between defendant and Det. McCartney.  Defendant does not lodge any specific objection to the recitation of facts contained in the report and recommendation, but does wish to highlight two portions of testimony given by Det. McCartney.  Accordingly, the Court adopts the factual findings in their entirety, with the addition of the two statements defendant asks the Court to consider.

Detective McCartney is employed by the St. Louis County Police Department.  He has been a police officer for fourteen years, and is currently assigned to the Division of Criminal Investigation/Special Investigations Unit.  His training has included attendance at information technology classes, investigative classes concerning crimes against children over the computer, and national conferences concerning the Internet and child pornography.

On June 23, 2008, Det. McCartney presented an application for a Search Warrant for 7378 Hazel Avenue, supported with an eight page Affidavit, to the Honorable John Ross of the St. Louis County Circuit Court.  The Affidavit states that he had reason to believe:

> POSSESSION OF CHILD PORNOGRAPHY to wit TO SEIZE, SEARCH AND ANALYZE ANY AND ALL ELECTRONIC DATA PROCESSING AND STORAGE DEVICES, COMPUTERS AND COMPUTER SYSTEMS INCLUDING CENTRAL PROCESSING UNITS, INTERNAL PERIPHERAL STORAGE DEVICES SUCH AS FIXED DISKS, EXTERNAL HARD DISKS, FLOPPY DISKS AND DISKETTES, TAPE DRIVES AND TAPES, OPTICAL STORAGE DEVICES OR OTHER MEMORY STORAGE DEVICES, PERIPHERAL INPUT/OUTPUT DEVICES SUCH AS KEY-BOARDS, PRINTERS, VIDEO DISPLAY MONITORS, OPTICAL READERS AND RELATED COMMUNICATIONS DEVICES SUCH

3

> AS MODEMS, ROUTERS AND OTHER WIRELESS DEVICES;
> ANY AND ALL CAMERAS AND RELATED EQUIPMENT, VIDEO
> AND AUDIO RECORDERS AND ALL RELATED RECORDING
> EQUIPMENT. ANY AND ALL PHOTOGRAPHS, COPIES OF
> PHOTOGRAPHS AND ANY MANUFACTURED HARD COPY OF
> IMAGES RELATED TO CHILD PORNOGRAPHY. ANY AND ALL
> LOGS CONTAINING USER NAMES, PASSWORDS AND DOCU-
> MENTATION OR OTHER IDENTIFIERS NECESSARY TO
> EXAMINE OR OPERATE ITEMS. TOGETHER WITH SYSTEM
> DOCUMENTATION, OPERATING LOGS AND HAND WRITTEN
> NOTES RELATED TO USER IDENTIFICATIONS, PASSWORDS
> AND/OR CHILD PORNOGRAPHY.

would be found at 7378 Hazel Avenue. Doc. #13-2, p. 1. The residence is described with particularity. The Affidavit goes on to describe Det. McCartney's experience including contacts with informants, other police officers, and subjects known to possess child pornography. It describes his training as having attended courses relating to child pornography and computer technology including but not limited to Internet Crimes Against Children (ICAC), Task Force Investigative Techniques Training, and an ICAC training seminar relating to child exploitation. He has also been trained in the Knoppix computer scan, and has performed thirty-six hours training in undercover computer chatting.

The Affidavit states that the matters contained in the Affidavit are based on Det. McCartney's personal knowledge or information provided to him by other law enforcement officers. It says that because the Affidavit is being submitted for the limited purpose of securing a search warrant, the Affidavit has not included each and every fact known to the affiant concerning the investigation.

The Affidavit states that on June 17, 2008, Det. McCartney was notified by Sergeant Adam Kavanaugh of the St. Louis County Police Department that during an authorized Internet undercover operation conducted on May 13, 2008, at 01:15 hours, a computer in the State of Missouri was identified as offering to participate in the distribution of child pornography. The Affidavit states that while using software configured to search the Gnutella Network (a public file sharing network) for Internet Protocol ("IP") addresses that had previously been identified through investigative techniques as possessing or offering to share files known to law enforcement to contain images/videos of child pornography, Sgt. Kavanaugh was able to identify a computer using the IP address of 68.188.82.208, in the St. Louis, Missouri area.

Sergeant Kavanaugh directly connected and successfully browsed a computer located at the IP address of 68.188.82.208 and obtained a list of publicly available files. He was able to identify the files by their SHA1 value which he had previously seen during prior investigations and believed to be child pornography.

The Affidavit then describes by file name, SHA1 number, and a brief narrative each of the twenty-six files identified which all depict minors engaged in sexually explicit conduct. The Affidavit notes that the list of files is merely a partial list. On June 19, 2008, Det. McCartney viewed the files and found them to contain the images as described.

A subpoena dated May 13, 2008, was sent to Charter Communications for the name, address, and billing information for the IP address of 68.188.82.208 assigned on May 13, 2008, at 01:15:19 hours. Sergeant Kavanaugh received a response from Charter Communications dated June 3, 2008, advising that the IP address was assigned to Ken Massey, 7378 Hazel Avenue, Maplewood, Missouri 63143, with a billing telephone number of 314-645-4117. An Ameren UE utilities check revealed that 7378 Hazel Avenue, Maplewood, Missouri 63143, has been registered to Kenneth R. and Margeret Massey since April 2, 2002, with a telephone number of 314-517-1488.

Detective McCartney stated that he knew from his training, experience, and the information provided by Sgt. Kavanaugh that the search results indicated that a computer using the IP address of 68.188.82.208 possessed and/or contributed to the distribution of child pornography.[1] Detective McCartney later stated that he was aware that it was possible that someone in the neighborhood (or even further away) from 7378 Hazel Avenue could have accessed the network (rather than Ken Massey or anyone who resided at 7378 Hazel Avenue). However, Det. McCartney also stated that, in his experience conducting these types of investigations,

---

[1]The report and recommendation contains a thorough recitation of the averments set forth in the Affidavit detailing what was known to Det. McCartney due to his training and experience.

he had never come across the situation of a third party accessing a network to participate in the distribution of child pornography.

Based on the contents of the Application and Affidavit, Judge Ross found that there was probable cause to believe that child pornography would be found at 7378 Hazel Avenue in Maplewood, Missouri, and he issued a Search Warrant for that address to seize, search, and analyze any and all of the items set out.

Detective McCartney testified that the Search Warrant was executed on June 26, 2008. Pursuant to standard practice for the execution of all county search warrants, entrance was made by the County Tactical Operations Unit. According to procedure, they enter a residence, secure it, and then call the detectives to conduct the search. While the residence on Hazel Avenue was being secured, three people walked down the street towards the house. They were stopped and identified themselves as Mr. and Mrs. Kenneth Massey and their daughter. Detective McCartney spoke to Mrs. Massey and told her they were executing a search warrant for child pornography. Mrs. Massey said she lived in the residence with her husband, her daughter, her son Michael, and Michael's friend, Norman Parham. She said she thought Michael and Norman were present in the residence. The Tactical Unit brought out two individuals who were located in the house, one of whom was defendant Michael Massey. They were handcuffed for the officers' safety. Detective McCartney took defendant to the rear of the house and removed the handcuffs. Defendant was wearing a t-shirt

and boxer shorts. Someone brought defendant a pair of pants and Det. McCartney allowed him to put them on.

Detective McCartney introduced himself to defendant and told him they were executing a search warrant for child pornography. Defendant said he lived in the residence with his mother, father, sister, and Norman Parham. Detective McCartney said he would like to ask defendant some questions and he advised defendant of his <u>Miranda</u> rights. The advice was done orally. Detective McCartney told him that he had the right to remain silent, that is, to say nothing, and that anything defendant said would be used against him; and that he had the right to have an attorney present for any questioning, and if he could not afford an attorney one would be appointed for him. Defendant indicated that he understood his rights and said that he was willing to answer questions. Detective McCartney stated that, at the point when he read defendant his <u>Miranda</u> rights, the probable cause to believe that defendant had committed a crime was based on the Affidavit and Search Warrant.

Defendant said he had a computer; in fact, each person in the residence had a computer. He said he used a file sharing program called LimeWire. Defendant then asked what the search warrant was for and Det. McCartney told him again it was for child pornography. Defendant said, "It's all mine, all the child porn is on my computer." Detective McCartney told defendant to hold off making any more statements until he could further investigate at

8

department headquarters. Detective McCartney told defendant he was not under arrest. He told defendant that if he participated at headquarters it would be completely voluntary. Defendant said he would cooperate, and Det. McCartney drove defendant to headquarters. Defendant was not handcuffed. During the drive there was no discussion about the investigation.

Detective McCartney and defendant went to an interview room in the Criminal Investigations Unit offices. Detective McCartney activated an audio recorder, and the recording shows that defendant was advised of his Miranda rights, that defendant was there voluntarily, and that he had come to the office with Det. McCartney but that no discussion had taken place during the trip. It shows he was re-advised of his rights and that he signed a waiver form. It shows, and Det. McCartney testified, how Det. McCartney re-advised defendant of his Miranda rights, that is, Det. McCartney read each right to defendant and defendant initialed that he understood. Defendant then read the waiver out loud. Detective McCartney told defendant that if he wanted to speak, to sign the form and that if he did not want to speak, not to sign the form. Defendant made incriminating statements about possessing child pornography.

## Discussion

Defendant objects to two of the magistrate judge's conclusions contained in the report and recommendation. First,

defendant objects to the conclusion that the Search Warrant was supported with probable cause. Second, defendant objects to the conclusion that Det. McCartney's questioning of defendant did not violate the Fourth Amendment. Defendant's objections are analyzed below.

**Search Warrant**

Defendant first objects to the magistrate judge's conclusion that the Search Warrant was issued with probable cause. Defendant states that, in this case, the images were found using a peer-to-peer file sharing network that has no password predicate. Therefore, defendant argues that a neighbor, a drive-by user, or even a more geographically distant browser wanting to upload or download images could do so simply by accessing the home network associated with the Massey residence. Defendant argues that because of this, there was not a sufficient link between a possible user of the IP address assigned to the Massey's residence and someone living in the Massey's residence, and therefore probable cause did not support the issuance of the Search Warrant. The government, however, opposes defendant's objection, stating that defendant did not present any evidence that it was likely that another person was accessing the Massey's IP address. Further, the government states that other districts have found that probable cause supports the issuance of a search warrant when an investigation links child pornography to an IP address and the IP address is

10

subsequently tied to a specific residence. The government argues that the magistrate judge properly evaluated the Affidavit to find probable cause for the Search Warrant, and that the evidence gathered should therefore not be suppressed.

In <u>United States v. Perez</u>, 484 F.3d 735 (5th Cir. 2007), a woman reported to the police that someone with the Yahoo ID "famcple" sent her an internet message containing child pornography. The police contacted the FBI, and a subpoena to Yahoo!, Inc., revealed that on the date the child pornography was sent, the transmitting computer used IP address 24.27.21.6. Through a second subpoena to the internet service provider, the FBI determined that this IP address was assigned to Perez. A search warrant was obtained to search Perez's residence, and child pornography was found. Perez objected to the search warrant, arguing that mere association between an IP address and a physical address is insufficient to establish probable cause. He argued that if he had used an unsecured wireless network, there existed the possibility that other individuals could connect to the Internet through his router and, consequently, use his IP address. The Fifth Circuit rejected Perez's argument, stating that "though it was possible that the transmissions originated outside of the residence to which the IP address was assigned, it remained likely that the source of the transmissions was inside that residence." <u>Id.</u> at 740. The Court notes that several other courts have similarly considered and rejected the instant objection. See <u>United States v. Carter</u>, 549

F. Supp. 2d 1257, 1268-69 (D. Nev. 2008) ("The fact that an outside computer user can gain access to the Internet through the Internet service subscriber's wireless connection and IP address, with or without his knowledge, or that computer users can use software to 'spoof' another person's assigned IP address or MAC address, are certainly possibilities that diminish the likelihood that the Internet transmission emanated from the subscriber's premises. The Court nevertheless agrees with Perez that...there would still have remained a likelihood or fair probability that the transmission emanated from the subscriber's place of residence and that evidence of child pornography would be found at that location."); United States v. Merz, 2009 WL 1183771, at *5 (E.D. Pa. May 4, 2009) ("The Court also concludes there was a sufficient connection between the IP address...and the physical location to which the IP address was linked to establish probable cause to search the physical location.").

This Court finds that, even accepting the assertion that the IP address could have been hijacked by a third party, the Affidavit provided probable cause to find that evidence of child pornography would be at 7378 Hazel Avenue. This is because the search warrant affidavit established that, through his use of peer-to-peer file sharing software, Sgt. Kavanaugh observed over twenty videos of child pornography (identified by hash value) on a computer with IP address 68.188.82.208 on May 13, 2008 at 1:15:19, which was associated with the account of Ken Massey (defendant's

father) at 7378 Hazel Avenue.  Defendant's objection will be overruled.[2]

**Detention**

Defendant also objects to the magistrate judge's conclusion that Det. McCartney's questioning of defendant did not violate the Fourth Amendment.  Defendant argues that the magistrate judge erred in concluding that he had not been "seized" under the Fourth Amendment when Det. McCartney began questioning him during the execution of the Search Warrant, and that Det. McCartney therefore did not need either a reasonable suspicion or probable cause.  The government opposes defendant's objection, and states that police may validly detain individuals on the premises during the execution of a search warrant in order to safely and securely execute a search of the premises.  Further, the government states that mere police questioning does not constitute a seizure, and that when taken to the Criminal Investigations Unit offices, Det. McCartney made clear that defendant was not under arrest and was

---

[2]Defendant asks that the Court create a bright-line rule requiring the government to place a digital marker on computers accessing or containing child pornography, so as to minimize the "fishing expeditions that invade far too much privacy of the innocent in an attempt to catch the guilty."  Doc. #22, p. 8.  The Court declines to do so, and finds that, given the totality of the circumstances in this case, the Affidavit provided a substantial basis for concluding that probable cause existed.  Further, the Court notes that the execution of the Search Warrant in this case cannot fairly be described as a "fishing expedition."  Police officers discovered that a user of a specific IP address possessed child pornography.  That IP address was then linked to a specific physical residence.  Therefore, there existed a fair probability that child pornography would be found at that residence to support the Search Warrant.

acting voluntarily.  The government argues that the magistrate judge properly concluded that defendant's Fourth Amendment rights were not violated, and that the statements made by defendant should not be suppressed.

The residents of a home subject to a search warrant "may be detained so as to prevent flight, minimize the risk of harm to the officers, and allow the officers to conduct an orderly search." United States v. Johnson, 528 F.3d 575, 579 (8th Cir. 2008). Further, "because a neutral magistrate has already found probable cause to search the home, there is naturally an articulable and individualized suspicion of criminal activity that justifies the detention of the home's occupants." Id.  "[T]he Supreme Court has squarely held 'that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.'" United States v. Martinez-Cortes, 566 F.3d 767, 770 (8th Cir. 2009) (quoting Michigan v. Summers, 452 U.S. 692, 705 (1981)).

Defendant was handcuffed for a brief period when the officers initially executed the Search Warrant.  After defendant was removed from the residence, the handcuffs were removed by Det. McCartney.  While the search was still occurring, Det. McCartney told defendant why the house was being searched, and that he would like to ask defendant some questions.  Defendant asked what the police were searching for, and upon learning the Search Warrant was

14

issued to look for child pornography, defendant stated that the child pornography was his. Defendant argues that this interaction with Det. McCartney's constituted a custodial interrogation, and that Det. McCartney therefore needed separate probable cause or a reasonable suspicion to pursue such an interaction. The Court disagrees. As the Search Warrant was being executed, defendant's initial detention was lawful. Detective McCartney's subsequent questions, occurring during the execution of this warrant, did not extend the duration of the lawful detention of defendant. Mere police questioning does not constitute a seizure, and "no reasonable suspicion is required to justify questioning that does not prolong an initially lawful stop." United States v. Turvin, 517 F.3d 1097, 1100 (9th Cir. 2008); see also Muehler v. Mena, 544 U.S. 93, 101 (2005) ("As the Court of Appeals did not hold that the detention was prolonged by the questioning, there was no additional seizure within the meaning of the Fourth Amendment. Hence, the officers did not need reasonable suspicion to ask [defendant] for her name, date and place of birth, or immigration status."). Further, when defendant accompanied Det. McCartney down to the Criminal Investigations Unit offices, Det. McCartney made painstakingly clear that defendant was not under arrest and that defendant was participating voluntarily. The Court finds no Fourth Amendment violation and will accordingly overrule defendant's objection.

The Court has carefully considered the magistrate judge's report and recommendation and the objections thereto. For the

above stated reasons, the Court finds that the report and recommendation should be adopted and approved, and that defendant's motion to suppress should be denied. Accordingly,

**IT IS HEREBY ORDERED** that defendant Michael Massey's objections to the report and recommendation [Doc. #22] are hereby overruled.

**IT IS FURTHER ORDERED** that the report and recommendation [Doc. #20] is accepted and adopted.

**IT IS FURTHER ORDERED** that defendant's motion to suppress evidence [Doc. #12] is denied.

Dated this ___10th___ day of November, 2009.

/s/Donald J. Stohr
UNITED STATES DISTRICT JUDGE